# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### MARTINSBURG

**ARTHUR LEE WALKER,**

Petitioner-Defendant,

**v.**

**UNITED STATES OF AMERICA,**

Respondent-Plaintiff.

**Civil Action No.: 3:14-cv-77 & 78**
**Criminal Action No.: 3:13-cr-11 & 23**
**(GROH)**

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On July 14, 2014, Petitioner-Defendant Arthur Lee Walker ("Petitioner" or

"Defendant"), acting *pro se*, filed identical Motions under 28 U.S.C. § 2255 to Vacate,

Set Aside or Correct Sentence by a Person in Federal Custody in two separate civil

actions ("the Petition"). [Civil Action No. 3:14-cv-77, ECF No. 1; Criminal Action No.

3:13-cr-11, ECF No. 128 and Civil Action No. 3:14-cv-78, ECF No. 1; Criminal Action

No. 3:13-cr-23, ECF No. 363.] On or about July 15, 2014, the Court ordered

Respondent-Plaintiff ("Respondent") to respond to the Petition.[1] [Criminal Action No.

3:13-cr-11, ECF No. 133, and Criminal Action No. 3:13CR23, ECF No. 367].

Subsequently, Respondent filed its Response to the Petition [Criminal Action No. 3:13-

---

[1] Initially, the undersigned was assigned Civil Action No. 3:14-cv-77 and Criminal Action No.
3:13-cr-11 and Magistrate Judge Kaull was assigned Civil Action No. 3:14-cv-78 and Criminal
Action No. 3:13-cr-23. However, after Petitioner's Motions in each of the civil actions were noted
to be identical, Civil Action No. 3:14-cv-78 and Criminal Action No. 3:13-cr-23 were reassigned
to the undersigned. [Civil Action No. 3:14-cv-78, ECF No. 5; Criminal Action No. 3:13-cr-23,
ECF No. 372]

cr-11, ECF No. 142; Criminal Action No. 3:13-cr-23, ECF No. 377] and Petitioner filed his Reply to the Response [Criminal Action No. 3:13-cr-11, ECF No. 146; Criminal Action No. 3:13-cr-23, ECF No. 378]. The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to Local Rule of Prisoner Litigation Procedure 2. For the reasons set forth below, the undersigned recommends that the Petition be denied.

## II. <u>BACKGROUND</u>

### A. Conviction, Sentence and Appeal

On May 7, 2013, a federal grand jury returned a four-count indictment against Petitioner and a co-defendant, Chera Ladene Schleycole.[2] Indictment, ECF No. 1.[3] In the Indictment, Petitioner was charged, *inter alia*, in Count Three with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). <u>Id.</u> at 4. Subsequently, on July 24, 2013, a separate federal grand jury returned a fifty-one-count indictment against Petitioner and eight co-defendants. Indictment, Criminal Action No. 3:13-cr-23, ECF No. 1. In this Indictment, Petitioner was charged, *inter alia*, in Count Forty-Two with aiding and abetting the distribution of cocaine base within 1,000 feet of a protected location, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 860. <u>Id.</u>

On September 24, 2013, Petitioner signed a written Plea Agreement, professing

---

[2] On August 31, 2011, "a bank was robbed in Pennsylvania." Sentencing Mem., ECF No. 93. Petitioner was a suspect in that robbery. <u>Id.</u> On September 22, 2011, the Berkeley County Sheriff's Department searched Petitioner's residence, which he shared with his co-defendant. <u>Id.</u> During the search, a firearm and a box of .380 caliber ammunition was discovered "in a chest of drawers containing male underclothing." <u>Id.</u> The firearm resembled the weapon used in the Pennsylvania bank robbery as seen in video surveillance. <u>Id.</u> Additionally, the box of ammunition matched a shell casing found at the robbery scene. <u>Id.</u>

[3] From this point, all ECF numbers refer to entries in the Criminal Action Nos. 3:13-cr-11 and 3:13-cr-23. If the specific criminal action number is not included in the cite, then the ECF reference is to Criminal Action No. 3:13-cr-11.

that he would plead guilty to Count Three of the Indictment in Criminal Action No. 3:13-cr-11 and to Count Forty-Two of the Indictment in Criminal Action No. 3:13-cr-23. Plea Agreement, ECF No. 185. In the Plea Agreement, the parties agreed that Petitioner's "total relevant conduct . . . with regard to Indictment 3:13CR11 is possession of one I.O. Inc., Hellcat .380 caliber, serial number 04203" and that his "total drug relevant conduct . . . [with regard to Indictment 3:13CR23 is] Base Offense Level 18." Id. at 4. The parties further agreed that Petitioner would waive his right to directly appeal and to collaterally attack his sentence. Id. Specifically, the parties agreed that:

> [D]efendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). . . .

Id.

On October 8, 2013, Petitioner appeared before United States Magistrate Judge James E. Seibert to enter his plea of guilty. Plea Order, ECF No. 46. During this hearing, Petitioner testified that he was twenty-eight years old and possessed a GED. Plea Tr. at 4:6-10, ECF No. 144. Petitioner further testified that, while he had been treated for a mental illness, his treatment in no way interfered with his ability to understand the proceedings or to form rational and knowledgeable judgments about the proceedings. Id. at 4:11-20. Subsequently, the following colloquy occurred:

THE COURT: Do you understand under the terms of the plea agreement

you are giving up the right to appeal the conviction and the right to file a habeas corpus petition?

THE DEFENDANT: Yes, sir.

THE COURT: I want to go--these are important, and I want to go over each with you. Everybody who is convicted in federal court has the right to appeal the conviction and sentence to the Fourth Circuit Court of Appeals down in Richmond. What would happen when you appeal is, three Judges down there look at what happened up here and determine whether it was done right or wrong. You're giving up that right. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: The other thing is, everybody convicted in federal court has the right to file habeas corpus petitions, sometimes called a 2255, which says: my conviction and my sentence aren't valid. You are giving up the right to in this plea agreement. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Compton, do you believe the defendant fully understands the importance of these two rights he's waiving?

MR. COMPTON: Yes, sir, I do.

Id. at 11:13-25; 12:1-12. After this colloquy, Petitioner stated that he understood that the Plea Agreement constituted the full agreement between himself and the Government. Id. at 12:19-22. Petitioner also understood that the sentencing court was not bound by the parties' stipulations as to relevant conduct and that he would not have the right to withdraw his guilty plea if the sentencing court failed to accept the stipulations. Id. at 18:7-11. Petitioner also stated that his counsel had adequately represented him and that "there was nothing he had asked his lawyer to do that was not done." Id. at 28:21-25; 29:1. Judge Seibert then reviewed all of the rights that Petitioner was foregoing by entering a plea of guilty. Id. at 19:1-25. Based on that review, the Judge Seibert determined that Petitioner understood the consequences of his guilty plea. Id. at 20:2-

25; 21:1.

During the plea hearing, the Government established a factual basis for Petitioner's guilty plea. Specifically, to establish a factual basis for Count Three of Criminal Action No. 3:13-cr-11, the Government presented the testimony of Special Agent Jeffrey Smith of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") stationed in Martinsburg, West Virginia. Id. at 21-24. To establish a factual basis for Count Forty-Two in Criminal Action No. 3:13-cr-23, the Government presented the testimony of Corporal Trampus Boyles of the Berkeley County Sheriff's Department, who was assigned to the Eastern Panhandle Drug and Violent Crimes Task Force. Id. at 25-27. Neither Petitioner nor his counsel questioned Special Agent Smith or Corporal Boyles during the hearing. Id. at 27:6-11.

After a factual basis for Petitioner's guilty plea was established, Petitioner informed Judge Seibert that he was guilty of Count Three of the Indictment in Criminal Action No. 3:13-cr-11 and of Count Forty-Two of the Indictment in Criminal Action No. 3:13-cr-23. Id. at 27:13-24. Additionally, Petitioner informed Judge Seibert that his plea was not a result of any threat, coercion or harassment and that the plea was not the result of any promises other than those contained in the Plea Agreement. Id. at 28:1-13. At the conclusion of the plea hearing, Judge Seibert found that Petitioner was competent to enter a plea of guilty, Petitioner had "full knowledge and understanding" of the consequences of entering a plea of guilty and a factual basis existed for the plea. Id. at 29:10-25. Petitioner did not object to these findings.

On January 13, 2014, Petitioner appeared before Chief United States District Judge Gina M. Groh for a sentencing hearing. Sentencing Tr., ECF No. 145. During the

hearing, Judge Groh determined that Petitioner's "adjusted offense level [was] 30" for

Count Three in Criminal Action No. 3:13-cr-11. Id. at 44:13-14. Judge Groh then

provided her reasoning for that determination:

> THE COURT: And we'll move on to the [federal Sentencing] Guideline[s] calculations ["the guidelines calculations"].
>
> All right, with just a two-level reduction for acceptance of responsibility, because I understand the Government is not moving for additional one-level reduction based upon the defendant's refusal to debrief, which I find is appropriate, and based upon the Court's finding that there would be no two level increase for obstruction, I'll make the following guideline calculation:
>
> Let's start in counsel following carefully with me to make sure we cover all of this and it is covered correctly: Using the 2013 guideline manual, I'm directing my attention first to Count 3, felon in possession of a firearm in 3:13-cr-11. The applicable guideline for the violation of 18 USC 922(g)(1) is found in U.S. Sentencing Guidelines 2K2.1(b)(6)(B), four levels are added because he used or possessed the firearm in connection with another felony offense, which is the bank robbery on August 30, 2011, in Chambersburg, Pennsylvania. Which according to his trial testimony, he committed. However, as we discussed during the objection phase in this sentencing, pursuant to 2K2.1d(c)(1)(A) of the Guidelines, cross reference is made to Guideline Section 2X1.1. in reference to the other offense because it produces a greater offense level. Under Guideline 2X1.1(c)(1), second cross reference is then made to Guideline 2B3.1 for robbery. So pursuant to Guideline 2B3.1(a), the base offense level is 20. Then, pursuant to Guideline 2B3.1(b)(1), two levels are added because the property of a financial institution was taken, and that was in the amount of $38,935. Pursuant to Guideline 2B3.1(b)(2)(A), seven levels were added because the firearm was discharged during the course of the bank robbery. We know that based on the testimony of the defendant. Pursuant to Guideline 2B3.1(b)(7)(B), one level is added because the loss was more than $10,000, but [less] than $50,000. That brings us to an adjusted offense level of 30.

Id. at 42:23-25; 43:1-25; 44:1-14.

Regarding Count Forty-Two of Criminal Action No. 3:13-cr-23, Judge Groh

determined that Petitioner's base offense level was 18, reasoning that Petitioner's

relevant conduct involved at least 5.6 grams, but less than 11.2 grams, of cocaine base.

Id. at 44:15-22. Judge Groh further determined that, pursuant to 2D1.1.(a)(2) of the federal sentencing guidelines, "one level is . . . added due to the offense occurring near a protected location, which is a school." Id. at 44:22-25. She then stated that:

> [W]e have to perform the multiple count adjustment under Guideline 3D1.4. The greater of the adjusted offense level is—that I have discussed—is 30.
>
> Under 3E1.1(a), I'm reducing the offense level by two levels for acceptance of responsibility, arriving at a Total Offense Level of 28. Defendant has a Criminal History Category IV. With a Criminal History Category IV and a Total Offense Level of 28, the guidelines call for imprisonment on Count 3 in 3:13-cr-11 of 110 to 120 months, and on Count 42 in 3:13-cr-23, 110 to 137 months.

Id. at 45:1-11.

On January 15, 2014, Judge Groh entered Judgments which sentenced Petitioner to a term of incarceration of 120 months each on Count Three in Criminal Action No. 3:13cr11 and County Forty-two in Criminal Action No. 3:13cr23, to be served concurrently but consecutively to his sentence imposed in Franklin County Court in Chambersburg, Pennsylvania, in Docket Number 1786-2012. Criminal Action No. 3:13cr-11, ECF No. 103; Criminal Action No. 3:13cr23, ECF No. 307. Petitioner did not file a direct appeal after his sentencing.

### III.  DISCUSSION

#### A.  Contentions of the Parties

In the Petition, Petitioner raises four grounds for relief. Petition, ECF No. 128. First, Petitioner argues that he was denied his Fifth Amendment right to due process when the Government delayed in seeking an indictment against him in Criminal Action No. 3:13-cr-11 for twenty months. Id. at 5. Second, Petitioner argues that his Fourth Amendment right against unreasonable searches and seizures was violated when his

residence and vehicle were searched by the Berkeley County Sheriff's Department on September 22, 2011. Id. at 39. Third, Petitioner argues that his Sixth Amendment right to effective assistance of counsel was violated when his counsel "[chose] not to represent [Petitioner] with a reasonable performance other than focusing on [him] taking a plea." Id. at 50. Finally, Petitioner argues that his sentencing was unconstitutional because, *inter alia*, the trial judge failed to use the evidentiary standard of beyond a reasonable doubt when subjecting him to a mandatory minimum sentence, in violation of Alleyne v. United States,133 S.Ct. 2151 (2013). Id. at 52-53.

In its Response to the Petition, Respondent contends that the Petition should be denied because Petitioner waived his right to directly appeal or collaterally attack his conviction and sentence. Resp. at 2, ECF No. 142. Respondent also counters Petitioner's arguments, contending that: (1) Petitioner did not suffer actual prejudice from the pre-indictment delay and the delay was needed to allow the Government time to investigate; (2) the search of Petitioner's residence and vehicle was not unreasonable and was authorized by a search warrant, which was supported by probable cause; (3) Petitioner failed to show that his counsel was ineffective and (4) Petitioner's sentencing was not unconstitutional because the Alleyne case is not applicable. Id. at 1-2. In his Reply to the Response, Petitioner reasserts his previous allegations. Reply at 1-3, ECF No. 146. Additionally, Petitioner argues that he was never convicted of the Pennsylvania bank robbery and that, therefore, the sentencing judge "erred by using those crimes in this matter as past criminal history in regards to determining the . . . sentence he ultimately received." Id. at 4.

**B.    Law Governing Waivers of Direct Appeal and Collateral Attack Rights**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." <u>Blackledge v. Allison</u>, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secured . . . only if dispositions by guilty plea are accorded a great measure of finality." <u>Id.</u> To this end, "the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." <u>United States v. Lemaster</u>, 403 F.3d 216, 220 (4th Cir. 2005).

Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" <u>United States v. Attar</u>, 38 F.3d 727, 731 (4th Cir.1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. <u>Id.</u> at 732. Furthermore, the <u>Attar</u> Court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. <u>Id.</u>

Subsequently, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. <u>Lemaster</u>, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." <u>Id.</u> at 220. The <u>Lemaster</u> Court did not address whether the same exceptions that were noted by the <u>Attar</u> Court apply

to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. Id. at 220 n.2; see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." Braxton v. United States, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005).[4] However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights. Cannady, 283 F.3d at 645 n.3 (collecting cases). Furthermore, most Courts of Appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver." Braxton, 358 F. Supp. 2d at 503.

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" Attar, 38 F.3d at 731 (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by

---

[4] The Fourth Circuit issued an unpublished per curiam opinion affirming the Western District of Virginia's ruling in Braxton. See United States v. Braxton, 214 F. App'x. 271 (4th Cir. 2007).

reference to the totality of the circumstances." <u>United States v. General</u>, 278 F.3d 389, 400 (4th Cir. 2002).

## C. Analysis of the Petition

### 1. Petitioner's Claims are Barred by Waiver

Petitioner raises claims of pre-indictment delay, unreasonable search, ineffective assistance of counsel and sentencing error. ECF 128. Respondent counters by arguing that Petitioner waived his right to collaterally attack his conviction and sentence in the Plea Agreement and agreed to the waiver at the plea hearing. ECF No. 142 at 5. A "defendant's sworn representations made at a [Federal Rule of Civil Procedure 11 ("Rule 11")] plea hearing 'carry a strong presumption of verity' and 'constitute a formidable barrier against any subsequent collateral proceedings.'" <u>Blackledge</u>, 431 U.S. at 74. Therefore, "in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" <u>Lemaster</u>, 403 F.3d at 221 (citations omitted).

In the present case, the undersigned finds that Petitioner's waiver of his right to file a § 2255 motion was knowing and intelligent for several reasons. <u>See</u> <u>Attar</u>, 38 F.3d at 731. First, Judge Seibert fully complied with Rule 11 in conducting Petitioner's plea hearing. During the plea hearing, Judge Seibert found that Petitioner was competent and capable of entering into an informed plea. ECF No. 144 at 29: 10-16. Judge Seibert then reviewed with Petitioner the nature and importance of the appellate rights he was waiving. <u>Id.</u> at 11: 13-12:12. Judge Seibert informed Petitioner that the waiver of his appellate rights would be binding on him. <u>Id.</u> At the conclusion of the hearing, Judge

Seibert found that Petitioner had entered into his plea freely and voluntarily and understood the consequences of the plea. Id. at 29: 10-16. Second, the language of the Plea Agreement clearly and unmistakably portrays Petitioner's waiver of his appellate rights. ECF No. 185. Finally, Petitioner represented by his statements at the plea hearing and by his signature on the Plea Agreement that he had been fully advised about and understood the terms of the Plea Agreement, including the waiver of his appellate rights. Id.; ECF No. 144 at 12:13-25. Consequently, Petitioner has waived his right to collaterally attack his conviction and sentence and the Petition should be dismissed.

## 2. The Merits of Petitioner's Claims

Notwithstanding the finding that Petitioner waived his right to collaterally attack his sentence, the undersigned has considered Petitioner's claims for relief on their merits. As an initial matter, the undersigned reviewed whether any of Petitioner's claims are procedurally defaulted due to Petitioner's failure to raise them in a direct appeal. Typically, "28 U.S.C. § 2255 'will not be allowed to do service for an appeal.'" Sunal v. Large, 332 U.S. 174, 178 (1947). However, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations omitted).

To establish cause, a movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). Actual prejudice is then

shown by demonstrating that the error worked to a petitioner's "'actual and substantial disadvantage,'" rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). To establish actual innocence, a petitioner must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (citations omitted) (internal quotation marks omitted). Usually, a petitioner "must demonstrate actual factual innocence of the offense of conviction;" "this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Mikalajunas, 186 F.3d at 494.

In the present case, Petitioner failed to file a direct appeal. Therefore, Petitioner's claims, excluding his ineffective assistance of counsel claim, would normally be barred absent a showing of cause and prejudice or actual innocence. See United States v. Richardson, 195 F.3d 192, 198 (4th Cir. 1999) (stating that claims of ineffective assistance of counsel not raised on direct appeal and raised on collateral attack do not require a "cause and prejudice" showing because the claims are more appropriately raised on collateral attack than on direct appeal). Petitioner, however, cannot demonstrate actual innocence because he admitted during the plea hearing that he was guilty of the crimes charged in Count 3 of the Indictment in Criminal Action No. 3:13-cr-11 and in Count 42 of the Indictment in Criminal Action No. 3:13-cr-23. Moreover, Petitioner has not alleged cause and prejudice. Consequently, Petitioner's claims of pre-indictment delay, unreasonable search and sentencing error are procedurally defaulted. Nevertheless, the undersigned has considered Petitioner's claims on their merits.

    **a.    Ground One: Pre-indictment Delay**

Petitioner argues that the Government's twenty-month delay in seeking his Indictment in Criminal Action No. 3:13-cr-11 violated his Fifth Amendment right to due process. ECF No. 128 at 5. Specifically, Petitioner alleges that ATF Agent Smith worked with the Pennsylvania State Police in obtaining the shell casing that was fired during the bank robbery on August 30, 2011, in Pennsylvania. Id. at 6-38. Petitioner further alleges that the shell casing was not found until August 31, 2011, and that ATF Agent Smith did not get a search warrant for his residence until September 22, 2011. Id. Petitioner also alleges that ATF Smith did not deliver the shell to ATF laboratories for examination and analysis until October 25, 2011. Id. Finally, Petitioner alleges that the U.S. Attorney's office "was aware that [he] would be [entering] a plea in [the Pennsylvania] state case" against him and waited to indict "federally . . . to undermine [his] defense in the [federal] case." Id.

Respondent counters by alleging that Petitioner committed an armed bank robbery in Chambersburg, Pennsylvania, and fired one shot during his flight from the bank. ECF No. 142, Resp. at 2-3. Prior to this bank robbery, Respondent alleges that Petitioner's co-defendant, Chera Schleycole, falsely represented herself to be the purchaser of a firearm, although the true purchaser was Petitioner. Id. Respondent alleges that the completed investigation against Petitioner and Ms. Schleycole was delivered to the U.S. Attorney's office on February 12, 2013, and that the four-count Indictment against them was returned on May 7, 2013, in which Petitioner was charged in Count Three with being a felon in possession of a firearm on September 22, 2011. Id. Respondent alleges that, after Petitioner was indicted in federal court, Petitioner pled guilty to being a prohibited person in possession of a firearm in the state of

Pennsylvania on May 13, 2013. Id. Finally, Respondent alleges that any pre-indictment delay was the result of completing the investigation against Petitioner and that the delay did not cause Petitioner any prejudice. Id.

The Fourth Circuit has developed a two-pronged test for courts to use when determining whether a pre-indictment delay violates the Due Process Clause of the Fifth Amendment. United States v. Automated Medical Laboratories, Inc., 770 F.2d 399, 403 (4th Cir. 1985). Initially, a court must ask whether the defendant proved actual prejudice. Id. This "prejudice prong" is "a heavy burden because it requires not only that a defendant show actual prejudice, as opposed to mere speculative prejudice, but also that he show that any actual prejudice was *substantial*—that he was meaningfully impaired in his ability to defendant against the [government's] charges to such an extent that the disposition of the criminal proceeding was likely affected." Jones v. Angelone, 94 F.3d 900, 907 (4th Cir. 1996) (emphasis in original) (internal citations omitted). Then, if the initial requirement is met, the court must consider the government's reasons for the delay. Id. A delay is justified if the time was needed to continue the investigation. United States v. Stinson, 594 F.2d 982, 984 (4th Cir. 1979).

In the present case, the undersigned finds that, if there was any pre-indictment delay, it did not violate Petitioner's due process rights for several reasons. First, although Petitioner argues that the Government waited to seek a federal indictment until after he entered a plea in the Pennsylvania state case against him, Petitioner pled guilty to the Pennsylvania state charge *after* the Indictment was returned in federal court. Second, Petitioner fails to show actual prejudice. To the contrary, Petitioner pled guilty to the charge of being a felon in possession of a firearm and testified at his co-

defendant's trial that "I went in the drawer. I seen the gun. I took the gun. I did the robbery with the gun." See ECF No. 145 at 25. Finally, the Government has demonstrated that any delay that occurred was not intentional but was the result of needing more time to complete the investigation of Petitioner and his co-defendant, which was not delivered to the United States Attorney until February 12, 2013. ECF No. 142. Consequently, the undersigned recommends that Petitioner's pre-indictment delay claim be denied.

###### b.    Ground Two: Unlawful and Unreasonable Search

Petitioner argues that his Fourth Amendment right against unreasonable searches and seizures was violated when his residence and vehicle were searched by the Berkeley County Sheriff's Department on September 22, 2011. Mot. at 40-49, ECF No. 128. In support of his argument, Petitioner alleges that the search was based on the statements of an unreliable person and that, therefore, the search warrant was not supported by probable cause. Id.  Respondent counters that the search warrant contained sufficient reliable information to support the issuance of a search warrant. ECF No. 142 at 1-2.

In Illinois v. Gates, 462 U.S. 213, 230 (1983), the Supreme Court adopted a "totality of circumstances approach" for magistrate judges to use when determining whether an affidavit provides probable cause for the issuance of a search warrant. Id. Under this approach, information provided by an informant, coupled with corroborating evidence produced by police investigation, is sufficient to establish probable cause. Id. The "task of the issuing magistrate [judge] is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him,

including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238.

In the present case, the undersigned finds that, after considering the totality of the circumstances, probable cause existed to issue the search warrant for Petitioner's residence and vehicle. The search warrant affidavit, which was based on an interview with "Phipps/Silver," contained detailed information establishing probable cause that was then corroborated by police investigation. Specifically, the search warrant affidavit discloses that Phipps/Silver, on the day of the bank robbery, dropped Petitioner off at North Middle School and that Petitioner got in a white Suburban that belonged to his significant other, "Chara," with whom Petitioner lived in Springfield Village. ECF No. 128 at 45. The affidavit further disclosed that a police officer spoke with the Berkeley County School Board and learned that the significant other's name was Chera Cole. Id. Finally, the affidavit disclosed that the police officer drove through Springfield Village and found a white Suburban registered to Chera Cole, which was sitting in front of 147 Whirlwind Drive in Martinsburg. Id. Consequently, because the information contained in the search warrant affidavit was corroborated by police investigation, the undersigned recommends that Petitioner's unreasonable search claim be denied.

### c.    Ground Three: Ineffective Assistance of Counsel Claims

Petitioner argues that his Sixth Amendment right to effective assistance of counsel was violated when his counsel "[chose] not to represent [Petitioner] with a reasonable performance other than focusing on [him] taking a plea." ECF No. 128 at 50. Petitioner further argues that his counsel "failed to object to a significant sentencing

issue and allowed the Court to sentence Petitioner in the aggravated range of sentencing guidelines." Reply at 15, ECF No. 146. Finally, Petitioner argues that his counsel failed to conduct a proper investigation of his case, failed to challenge the unlawful search warrant and failed to challenge the pre-indictment delay.[5] Id. at 17. Respondent counters by arguing that, because Petitioner admitted under oath that he had possessed a firearm and used it in a bank robbery, his counsel's advice to enter into a plea agreement constituted effective representation. ECF No. 142 at 9.

The United States Supreme Court has set forth a two-prong test for courts to use when determining whether a convicted defendant's claim of ineffective assistance of counsel warrants reversal of the conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" the counsel's performance and a strong presumption exists that the "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289

---

[5] Despite Petitioner's claims of ineffective assistance of counsel, Petitioner fails to argue that, but for his counsel's alleged ineffectiveness, "he would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

(4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that, if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297. Considering these legal standards and definitions, each of Petitioner's Contentions will be discussed in turn.

> **i. Petitioner's Contentions Regarding Defense Counsel's Unreasonable Focus on the Entering of a Plea, Failure to Properly Investigate the Case, Failure to Challenge the Unlawful Search and Failure to Challenge the Pre-Indictment Delay**

On October 8, 2013, during the plea hearing, Judge Seibert questioned Petitioner regarding the circumstances surrounding his plea. Plea Tr., ECF No. 144. Specifically, the following colloquy occurred:

> THE COURT: Has anyone attempted to force or threaten you to plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Is the plea the result of any promises, other than the promises contained in the written plea agreement?

THE DEFENDANT: No, sir.

THE COURT: Has anyone promised or predicted the exact sentence which will be imposed upon you?

THE DEFENDANT: No, sir.

THE COURT: Do you understand no one can know at this time the exact sentence which will be imposed upon you?

THE DEFENDANT: Yes, sir.

THE COURT: Has Mr. Compton adequately represented you in this matter?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything Mr. Compton has not done which you asked him to do?

THE DEFENDANT: No, sir.

THE COURT: Are you in fact guilty of the crimes charged in Count 3 of the Indictment in 3:13-cr-11 and Count 42 of the indictment in 3:13-cr-23?

THE DEFENDANT: Yes, sir.

Id. at 28:1-25; 29:1-5. Additionally, when Petitioner was asked whether he understood that he was "giv[ing] up the right to have [his counsel] move to suppress any evidence that either of [them] believe[d] was illegally obtained," Petitioner answered in the affirmative. Id. at 19:23-25; 20:1.

After reviewing Petitioner's statements at the Rule 11 plea hearing, the undersigned finds that Petitioner's contentions that his counsel solely focused on the entering of a plea, failed to investigate the case and failed to file appropriate motions on

his behalf are without merit. Because Petitioner pled guilty, his statements at the Rule 11 plea hearing "carry a strong presumption of verity." <u>Blackledge</u>, 431 U.S. at 74. While Petitioner alleges that his counsel solely focused on the entering of a plea, failed to investigate the case and failed to challenge the search warrant and pre-indictment delay, these allegations directly contradict his sworn testimony at the Rule 11 plea hearing. Therefore, the undersigned finds that the allegations are "'palpably incredible' and 'patently frivolous or false.'" <u>Lemaster</u>, 403 F.3d at 221 (citations omitted). Moreover, Petitioner fails to allege any extraordinary circumstances that explain why his statements at the Rule 11 plea hearing contradict his allegations in the Petition. <u>Id.</u> Consequently, the undersigned recommends that Petitioner's claim of ineffective assistance of counsel as to these issues be denied.

### ii. Petitioner's Contention Regarding Defense Counsel's Failure to Object to the Use of his Prior Testimony, Given at his Co-Defendant's Trial, During the Sentencing Hearing

On January 13, 2014, during the sentencing hearing, the Government presented evidence showing that Petitioner: (1) violated the terms of the Plea Agreement; (2) obstructed justice; (3) failed to accept responsibility for his actions and (4) committed perjury. Sentencing Tr. at 25, ECF No. 145. In addition, the Government did not move for a one-level reduction for Petitioner's refusal to debrief, which it asserted constituted a violation of the terms of the Plea Agreement, which the Court found appropriate. <u>Id.</u> However, the Sentencing Court denied the Government's motion for a two-level increase for obstruction of justice and for perjury, finding that Petitioner's testimony did not meet the perjury standard. <u>Id.</u> at 39:18-25; 40:1-10. Finally, the Sentencing Court assigned Petitioner a two-level reduction for accepting responsibility for his actions. <u>Id.</u>

at 43:1-7.

   Plaintiff challenges the increase of his base offense level, which the Sentencing Court increased after cross referencing another offense.[6] Specifically, the Sentencing Court initially determined that the base offense level was 14, but increased it to 30 after cross referencing the Pennsylvania bank robbery based on Defendant's testimony at his co-defendant's trial. ECF No. 145 at 43:17-25. This issue was addressed by both defense counsel and the Government in their sentencing memoranda and objections to the presentence report ("PSR"). Additionally, the issue was thoroughly argued by both defense counsel and the Government during the sentencing hearing. Defense counsel's argument with regard to the cross reference issue was that a three-week gap existed between the bank robbery and the felon in possession charge, to which Defendant pled guilty. Id. at 16:20-25; 17:1-2. The Sentencing Court found, however, that the probation officer had calculated the guideline range correctly. Id. at 17:3-5. The Sentencing Judge stated that "I don't see it as a three-week gap. I see it as a continuation of a series of related events, based on the testimony that I recall hearing at trial, including this defendant, Mr. Walker's testimony." Id. 17:5-8. The Sentencing Judge further stated that:

> It is clear to me, as I stated, that firearm was used in connection with a robbery, which allows with the cross reference under Guideline 2B3.1…relying on the Fifth Circuit case in Outley and 2K2.1 notes, and correctly applied that 2K2.1 is not restricted to offenses which would be relevant conduct, but does embrace all illegal conduct performed or intended by a defendant concerning a firearm involved in the charged offense. And that is exactly what we have here, and that's why I find the probation officer's calculation was appropriate in this matter.

---

[6] Petitioner questions the legality of this cross reference. Reply at 17-21, ECF No. 146,. The merits of the cross reference claim, which constitute Plaintiff's fourth claim for relief, will be discussed in the next section.

Id. at 19:7-18.

The undersigned finds that the Sentencing Court properly applied the correct base offense level and that, therefore, Petitioner fails to demonstrate the requisite prejudice for his claim. See Strickland, 466 U.S. at 691. Petitioner offers no proof that the guideline calculations were incorrect. Moreover, defense counsel objected to the Sentencing Court's guideline calculations and thoroughly briefed and argued the issue at the sentencing hearing. Finally, Petitioner cites no law to support his proposition that a sentencing court cannot use self-incriminating testimony from a co-defendant's trial when calculating a sentence. Because the undersigned finds that there was no prejudice, the undersigned "need not consider the performance prong." Fields, 956 F.2d at 1297. Nevertheless, the undersigned further finds that defense counsel did not commit any error in his representation of this legal issue. Consequently, the undersigned recommends that Petitioner's claim of ineffective assistance of counsel as to this issue be denied.

### d.    Ground Four: Unconstitutional Sentencing

#### i.    Alleyne Issue

Petitioner appears to argue that his sentencing was unconstitutional because the Sentencing Judge failed to use the evidentiary standard of beyond a reasonable doubt when subjecting him to a mandatory minimum sentence, in violation of Alleyne. ECF No. 128 at 52-53. Respondent argues that the holding from Alleyne does not apply to this case. ECF No. 142 at 4. In Alleyne, the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' [of the offense charged and] must be submitted to the jury" and "found beyond a reasonable doubt." Alleyne, 133 S.Ct. 2151,

2155 (2013). In the present case, the undersigned finds that <u>Alleyne</u> does not apply because Petitioner entered into the Plea Agreement and waived his right to a jury trial. Because Petitioner waived his right to a jury trial, he also "waived his right for a jury to make sentencing determinations beyond a reasonable doubt." <u>Newlen v. United States</u>, Nos. 5:13-cv-112, 5:11-cr-24, 2014 WL 1787779, at *3 (N.D. W.Va. May 5, 2014); <u>Grantham v. United States</u>, Nos. 5:13-cv-104, 5:10-cr-37, 2014 WL 296937, at *3-4 (N.D. W.Va. Jan. 27, 2014). Accordingly, to the extent Petitioner raises an <u>Alleyne</u> argument, the argument is meritless. Consequently, the undersigned recommends that Petitioner's sentencing error claim as to this issue be denied.

### ii. Cross Reference Issue

In his Reply, Petitioner argues that the Sentencing Court erred in applying the cross reference provision in U.S.S.G. 2K2.1(c)(1)(A). As an initial matter, the Court could deem this issue waived, as Petitioner raised it for the first time in his Reply. <u>See Moseley v. Branker</u>, 550 F.3d 312, 325 n.7 (4th Cir. 2008) ("As a general rule, arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived.").

Regardless, the issue of whether the cross reference provision of U.S.S.G. § 2K2.1(c)(1)(A) should be applied was thoroughly briefed and argued at sentencing. U.S.S.G. § 2K2.1(c)(1)(A) provides that if the firearm is used or possessed in connection with the commission of another offense, the resulting offense level of the other offense shall be applied if it is greater than the otherwise applicable base offense level. U.S.S.G. § 2K2.1(c)(1)(A). As previously noted, Defense counsel argued that the cross reference provision should not apply because a three-week gap existed between

the bank robbery and the felon in possession charge. ECF No. 145 at 16:20-25; 17:1-2.

However, the Sentencing Judge disagreed, stating that "I don't see it as a three-week

gap. I see it as a continuation of a series of related events, based on the testimony that I

recall hearing at trial, including this defendant, Mr. Walker's testimony." Id. at 17:5-8.

The Sentencing Judge further stated that:

> It is clear to me, as I stated, that firearm was used in connection with a robbery, which allows with the cross reference under Guideline 2B3.1…relying on the Fifth Circuit case in Outley and 2K2.1 notes, and correctly applied that 2K2.1 is not restricted to offenses which would be relevant conduct, but does embrace all illegal conduct performed or intended by a defendant concerning a firearm involved in the charged offense. And that is exactly what we have here, and that's why I find the probation officer's calculation was appropriate in this matter.

Id. at 19:7-18. The Sentencing Judge thus overruled Defense counsel's objection and

applied the cross reference provision. See Id.

After reviewing the sentencing record, the undersigned finds that the Sentencing

Judge correctly applied the cross reference provision in U.S.S.G. 2K2.1(c)(1)(A).

Consequently, the undersigned recommends that Petitioner's sentencing error claim as

to this issue be denied.

## IV.    RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that Petitioner's Motions Under 28

U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal

Custody [Civil Action No. 3:14-cv-77, ECF No. 1; Criminal Action No. 3:13-cr-11, ECF

No. 128; Civil Action No. 3:14-cv-78, ECF No. 1; Criminal Action No. 3:13-cr-23, ECF

No. 363] be **DENIED** and that the § 2255 proceedings be **DISMISSED WITH**

**PREJUDICE**. The undersigned further **RECOMMENDS** that Petitioner's Motion to

Compel and Release Discovery to Petitioner on Appeal [Criminal Action No. 3:13-cr-23,

ECF No. 485] be **DENIED AS MOOT**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to the parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 25th day of February, 2016.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE